IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 7, 2000 Session

## TERRY W. STONE v. FAULKNER, MACKIE & COCHRAN, ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 99C 2154     Hamilton V. Gayden, Jr., Judge**

**No. M2000-00125-COA-R3-CV - Filed January 22, 2001**

Plaintiff, Terry Stone d/b/a Medical Claims and Collections Specialist, sued Defendants, David Cochran, and Faulkner, Mackie & Cochran, for interference with contractual and business relationships between Plaintiff and Plaintiff's third-party client, Levine & Sharp Associates. The trial court granted Defendants' motion for summary judgment in this matter finding no genuine issue of material fact and dismissed Plaintiff's claims. The question presented to the Court is whether or not there are genuine issues of material fact such that the trial court erred in granting Defendants' Motion for Summary Judgment on the claim for interference with a business relationship. We affirm the trial court's dismissal of this claim.

**Tenn. R. App. P. 3 Appeal as of Right ; Judgment of the Circuit Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and WILLIAM C. KOCH, JR., J., joined.

James L. Harris, Nashville, Tennessee, for the appellant, Terry Stone.

H. Rowan Leathers, III, Nashville, Tennessee, for the appellees, Faulker, Mackie & Cochran, P.C., and David Cochran, individually.

### OPINION

FACTUAL HISTORY

Plaintiff, Terry Stone d/b/a Medical Claims and Collections Specialist, signed a service agreement (the 'Agreement') for Plaintiff to provide computerized claims, billing, and collection services to Levine & Sharp Associates ('L & S'), a medical partnership. This agreement contained a provision whereby either party could terminate the Agreement for any reason by providing thirty days written notice to the other party. A little over a year and a half after signing the Agreement, L & S utilized the termination clause and provided Plaintiff with notice that the Agreement would be

terminated in thirty days. Following this termination, Plaintiff filed suit against the accounting firm of Faulkner, Mackie & Cochran and Mr. David Cochran.

It is Plaintiff's allegation that Faulkner, Mackie & Cochran, and in particular Mr. David Cochran, intentionally interfered with the business relationship between L & S and Plaintiff. Mr. Cochran allegedly made statements to L & S asserting that the reports provided by Plaintiff were not correct; that Plaintiff and Defendant could not communicate, and that L & S should replace Plaintiff with someone more knowledgeable. It was also alleged that Mr. Cochran suggested several friends who did the same type of work as Plaintiff with whom he would have a better working relationship. Just before termination of the contract, Mr. Cochran further expressed to L & S that he did not want to continue working with Plaintiff and did not have confidence in Plaintiff's reports or abilities.

Defendants filed a Motion for Summary Judgment, and in support of this motion, the affidavit of Stephan C. Sharp, one of the doctors of Levine & Sharp, was provided. Dr. Sharp stated in his affidavit that the decision to terminate the service agreement was based upon dissatisfaction with the services provided by Plaintiff, not a result of advice provided by David Cochran or his CPA firm. Plaintiff's response to Defendants' Motion for Summary Judgment provided only the affidavit of Terry Stone, Plaintiff in this case, and the affidavit of his wife, Lori Stone, who works with him in his business. These affidavits merely contained allegations of the statements made by Mr. Cochran.

ISSUES PRESENTED FOR APPEAL

The sole issue presented for review is whether the trial court properly granted summary judgment to Defendants with regard to Plaintiff's cause of action against Defendants for tortiuous interference with a business relationship.

> The standards governing an appellate court's review of a trial court's action on a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the trial court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. of Civ. P. 56 have been met.

*Carvell v. Bottoms*, 900 S.W.2d 23 (Tenn. 1995). Thus, we review this matter *de novo* with no presumption of correctness. *See Owens v. Truckstops of Am.*, 915 S.W.2d 420, 424 (Tenn. 1996); Tenn. R. App. P. 13(d).

The Tennessee Supreme Court in *Byrd v. Hall,* 847 S.W.2d 208 (Tenn. 1993), sets out an exhaustive discussion of Tennessee's summary judgment standard.

> Rule 56 comes into play only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Thus, the issues that lie at the heart of evaluating a summary judgment motion are: (1) whether a

*factual* dispute exists; (2) whether the disputed fact is *material* to the outcome of the case; and (3) whether the disputed fact creates a *genuine* issue for trial.

*Byrd*, 847 S.W.2d at 214 (emphasis in original). In addition, "complete failure of proof concerning an essential element of the moving party's case necessarily renders all other facts immaterial." *Id*. at 213.

Plaintiff's sole argument on appeal was that the facts set forth in Plaintiff's complaint and amended complaint stated a cognizable cause of action for the tort of interference with a business relationship. The elements of this tort can be found in *New Life Corp. of Am. v. Thomas Nelson, Inc.*, 932 S.W.2d 921 (Tenn. Ct. App. 1996). In order to create a *prima facie* case of tortiuous interference with a business relationship, Plaintiff must show: (1) the existence of a valid business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy;[1] and (4) resulting damages to the party whose relationship or expectancy has been disrupted. *New Life Corp.*, 932 S.W.2d at 927. In addition, Plaintiff must also show malice or ill will to recover for tortiuous interference with a business relationship. *Teserman v. Tragesser*, 789 S.W.2d 553, 556 (Tenn. Ct. App. 1998). The facts of this case do not demonstrate the necessary elements for a *prima facie* case of tortiuous interference with a business relationship.

First, no malice on the part of Defendant was ever shown. Plaintiff presented testimony in the form of an affidavit which stated, in essence, that Defendant and Plaintiff had difficulty working together. Plaintiff alleged that Defendant made statements to the effect that the parties "do not speak the same language" and that Defendant felt that Plaintiff did not possess the requisite knowledge necessary to perform the job. Defendants, as accountants for L & S, also offered to suggest other companies or individuals which might replace Plaintiff should L & S so choose that action. However, even assuming these allegations are true, none of these statements rise to the level of actual malice necessary for the tort of intentional interference with a business relationship.

Second, Steven C. Sharp, one of the partners of L & S, testified through affidavit that termination of Plaintiff was solely due to L & S's dissatisfaction with the services provided by Plaintiff. Dr. Sharp went on to say, "the service agreement was not terminated as a result of advice provided by either David Cochran, CPA, or any other representative of Faulkner, Mackie & Cochran, P.C." Dr. Sharp's affidavit is undisputed, as no evidence was presented to controvert the reason given by Dr. Sharp for terminating Plaintiff's services. There was no proof presented that any interference by Defendant in the relationship between Plaintiff and L & S caused the termination of the relationship.

---

[1] It should be noted that the law in Tennessee is well settled that there can be no action for interference with a prospective business relationship. *See Nelson v. Martin*, 958 S.W.2d 643, 645 (Tenn. 1997); *Polk & Sullivan, Inc. v. United Cities Gas Co.*, 783 S.W.2d 538, 543 (Tenn. 1989); *Shahrdar v. Global Housing, Inc.*, 983 S.W.2d 230, 238 (Tenn. Ct. App. 1998).

This matter is simply a situation where Plaintiff and a third party, L & S, entered into a contract which could be terminated for any reason and at any time by providing thirty days written notice. L & S utilized its termination clause and terminated the contract according to its terms. As there was no evidence presented of actual malice on the part of Defendant, nor was any evidence presented to refute Dr. Sharp's testimony that Defendants' actions did not cause Plaintiff's termination, the trial court was correct to grant summary judgment to Defendant and dismiss Plaintiff's complaint.

_____
WILLIAM B. CAIN, JUDGE